CUSTOM BUILDERS, INC., Plaintiff-Appellee, *v.* CARROLL L. CLEMONS *et al.*, Defendants-Appellants.

Third District   No. 76-508

Opinion filed September 8, 1977.

Charles W. Kohr, of Mathis, Sloan & Littler, of Peoria, for appellants.

Jack A. Coney, of Peoria, for appellee.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendants Carroll L. and Mary Joyce Clemons appeal from a mechanic's lien foreclosure decree entered by the trial court in favor of the contractor who built their home, plaintiff Custom Builders, Inc. The decree granted plaintiff the right to recover the amount of $22,341.74, and denied defendants' counterclaim for $12,300.

In April of 1975 plaintiff, by its president Victor Heuermann, entered into a written contract with defendants whereby plaintiff agreed to build a three bedroom bi-level home on lot 41 in Lynnhurst subdivision in the City of Peoria for the sum of $44,530. The contract provided that the amount payable was subject to any extra charges or credits agreed upon in writing between the parties. After the contract was executed, defendants purchased lot 41 in Lynnhurst subdivision. Before construction began, the parties discovered that special subdivision setback lines were more restrictive than the Peoria zoning ordinance and

would require building defendants' house 12 feet further back on the lot than originally planned. Heuermann informed defendants that, because of the slope of the lot, the change in the building location would necessitate additional work which would cost an extra $1,400.

When defendants refused to pay the additional sum, Heuermann suggested that the house be changed to a ranch-style home with substantially the same floor plan. Defendants agreed to the change, and during construction, defendants made two payments of $10,000 each. Numerous changes were made in the original contract specifications, most of which were agreed to orally.

Defendants moved into the home on October 30, 1975, but they refused to pay plaintiff the balance of the purchase price because of certain disputed items. Plaintiff filed a claim for mechanic's lien and then began this foreclosure proceeding. Attached to the foreclosure complaint was a list of extras totaling $1,436.83 and a list of credits totaling $3,302.60, which resulted in a credit balance of $1,865.77 in favor of defendants, with a balance due of $22,564.23.

Defendants retained counsel who filed pretrial motions and pleadings, including a countercomplaint. On May 24, 1976, the day before the trial date, defendants' attorney filed a motion to withdraw as counsel, stating as grounds that counsel and defendants "have reached irreconcilable differences in the conduct of the case and that it would be to the advantage of the defendants, as well as counsel to disassociate." The court granted counsel's motion to withdraw by an order which recited that the motion was granted "upon representation that defendants have been notified." Trial was postponed to June 3, 1976, at defendants' request.

On June 3, 1976, defendant Mary Joyce Clemons appeared *pro se,* and trial commenced. Heuermann testified to the circumstances of the change in plans to a ranch, and to plaintiff's list of extras and credits.

Mrs. Clemons cross-examined Heuermann about his failure to use brick on the side exterior walls, the size of the garage, two windows that were deleted, a basement closet that was omitted, a wall-hung lavatory which was replaced with a vanity lavatory, heat vents left out in the basement, and debris left in the yard. Plaintiffs rested their case at the close of Heuermann's testimony.

When trial resumed on June 14, 1976, Mrs. Clemons called an appraiser as her first witness. He testified that the garage is 1 3/4 inches shorter than the length shown on the blueprints, and he described other deficiencies in the construction of the house. On cross-examination, the appraiser testified that the current value of the house was $59,045. Mrs. Clemons objected that the present value was not relevant, but the court overruled her, stating that one question in a mechanic's lien foreclosure is whether

the buyer is getting his money's worth. Later in the trial the court observed that the appraised value had little relevancy because of the inflation factor.

Mrs. Clemons then testified to various problems with the construction, and she attempted to give her estimation of the value of damage incurred. For example, she stated that the 1 3/4 inch shortage as to the garage length should be valued at $1,500 because a big car or a station wagon would not fit. The court sustained plaintiff's objections to defendant's damage estimates, and explained to Mrs. Clemons that she must have either a paid bill or a witness who can testify as to the cost of correcting the things that were wrong.

At Mrs. Clemons' request, the trial was continued until June 28, 1975. When trial resumed Mrs. Clemons was allowed to continue her testimony by means of a narrative statement which was largely argumentative. At that time Mrs. Clemons narrowed the issues by saying that only 8 of the 16 items on her list of "Items to be given credit" were matters that she thought were wrong with the job. Heuermann then returned to the stand to testify about the contested items. The court cross-examined Heuermann at length about omitted heat vents, debris left in the yard, and several other items.

In summary, Mrs. Clemons was given every possible opportunity to present her case and was treated with consummate patience and courtesy by the trial judge. In deciding the case, the court disallowed $162 of the extras claimed by plaintiff and allowed defendants $204 in credits in addition to those credits admitted by plaintiff. The total amount due from defendants to plaintiff was found to be $22,341.74, and the countercomplaint was dismissed for lack of competent evidence.

On appeal, defendants claim, first, that the trial court erred in permitting defendants' attorney to withdraw and in allowing Mrs. Clemons to appear *pro se*; second, that it was error to admit parol evidence of oral modifications of the contract, and, third, that plaintiff breached the contract. We affirm the decree of the trial court.

■■■ Defendants argue that the trial court abused its discretion in permitting defendants' attorney to withdraw on the day prior to the trial date. The record indicates that counsel gave defendants notice of the withdrawal and that the trial court allowed a reasonable time for defendants to obtain new counsel by continuing the trial from May 25 to June 3. As a general rule, it is a matter within the sound discretion of the trial court whether reasonable notice of withdrawal was given to a party by counsel and whether the withdrawal should be allowed. (*Bergman v. Hedges* (1st Dist. 1969), 111 Ill. App. 2d 35, 249 N.E.2d 666.) In our judgment, the trial court did not abuse its discretion in the instant case when it permitted counsel to withdraw. Similarly we see no error in

permitting the cause to proceed to trial with Mrs. Clemons appearing on her own behalf. It is clear from the record that Mrs. Clemons was determined to pursue her own theory of defense, regardless of its legal merits. In that situation, we believe the court acted properly in permitting the trial to proceed.

■■■ Although defendants suggest that Mrs. Clemons' representation of her codefendant husband amounted to the unauthorized practice of law in violation of section 11 of "An Act to revise the law in relation to attorneys and counselors" (Ill. Rev. Stat. 1975, ch. 13, par. 11), we do not agree. She appeared in her own behalf and was clearly the main party of interest in the proceeding, while Mr. Clemons did not appear and took no part in the proceedings. Also, after carefully reviewing the record, we find nothing to support defendants' contention that they were prejudiced by Mrs. Clemons' lack of legal training and hence that they did not receive a fair trial. The trial judge bent over backwards to be helpful to Mrs. Clemons, even to the point of laying a proper foundation for the admission into evidence of some of her exhibits. Thus, we find no error in Mrs. Clemons' *pro se* appearance.

■■ Defendants also claim that it was error to admit parol evidence of oral modifications to the original contract because the contract expressly provided that all modifications were to be in writing. Generally, a condition that all extra work be performed only upon written orders can be waived orally by the owner, but before the contractor is entitled to compensation for such extras, the waiver must be proved by clear and convincing evidence. (*Atlee Electric Co. v. Johnson Construction Co.* (1st Dist. 1973), 14 Ill. App. 3d 716, 303 N.E.2d 192.) Here Mrs. Clemons testified that she agreed orally to several modifications in the contract, including the major change from a bi-level to a ranch style home and also numerous changes in the basement layout. She further admitted that she disagreed with only two of the extra charges: $39.90 for kitchen cabinets and $277 for extra work in the hallway and bath. Quite clearly the testimony of Mrs. Clemons established her waiver of the contractual requirement that modifications be in writing.

■■ Defendants finally contend that plaintiff is not entitled to recover the full contract price because plaintiff breached both the original written contract and the oral modification. Although some of the evidence was conflicting as to deficiencies in the construction, we cannot say the decision of the trial court was contrary to the manifest weight of the evidence. The question to be decided by the court was whether plaintiff proved that defendants got substantially what they bargained for, with deductions from the contract price for any difference between actual performance and the bargained-for product. (*Watson Lumber Co. v. Guennewig* (5th Dist. 1967), 79 Ill. App. 2d 377, 226 N.E.2d 270.) Here

defendants received a total of $3,506.64 in credits. Considering all of the evidence before the court, we find no reversible error in the decree.

Accordingly, we affirm the decree of the Circuit Court of Peoria County.

Affirmed.

STOUDER and SCOTT, JJ., concur.